# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION | § | |
| | § | |
| v. | § | CASE NO. 4:15-CV-829 |
| | § | Judge Mazzant |
| LIBERTY SUPPLY CO., also d/b/a Omni | § | |
| Services; et al. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants Liberty Supply Co. d/b/a Omni Services, Mia L. McCrary, John B. Hart, and Nor-Jay Enterprises, Inc.'s Re-Urged Emergency Motion to Lift Asset Freeze to Provide Interim Attorneys' Fees (Dkt. #83) and Defendants' Amended Motion to Lift Asset Freeze to Provide Interim Attorneys' Fees (Dkt. #158). After reviewing the relevant pleadings, the Court finds that the motions should be denied.

## BACKGROUND

On December 4, 2015, the Federal Trade Commission (the "FTC") filed its complaint against Defendants, in which it alleged that Defendants operated an unlawful office supply scam that violated the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. § 45(a), the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and the Unordered Merchandise Statute, 39 U.S.C. § 3009 (Dkt. #1). Also on December 4, 2015, Plaintiff requested an ex parte Temporary Restraining Order ("TRO") with injunctive, receivership, and asset freeze provisions (Dkt. #4). On December 4, 2015, the Court granted Plaintiff's Motion for Temporary Restraining Order, entered its temporary restraining order, and set the case for a show cause for December 17, 2015 at 10:00 a.m. (Dkt. #12).

On December 17, 2015, the Court held a preliminary injunction hearing, and at the end of the hearing, extended the TRO for fourteen days to allow the parties to brief the issue regarding

1

the proper scope of the asset freeze under the FTC Act (Dkt. #30). On December 30, 2015, the Court entered its Preliminary Injunction, which continued the appointment of the receiver, enjoined further violations of law, and continued the asset freeze against Defendants (Dkt. #36). Also on December 30, 2015, the Court entered its Order Regarding Receiver's Motion for Miscellaneous Relief (Dkt. #37), which the Court later amended on January 8, 2016 (Dkt. #42).[1]

On January 19, 2016, Defendants filed their Emergency Motion to Lift Asset Freeze to Provide Interim Attorneys' Fees (Dkt. #45), and their Emergency Motion to Lift Asset Freeze to Provide for Interim Living Expenses (Dkt. #46). On February 1, 2016, the Court denied Defendants' Emergency Motion to Lift Asset Freeze to Provide Interim Attorneys' Fees, in which it stated that "Defendants' motion should be denied until they provide verified financial statements to Plaintiff." (Dkt. #59 at p. 1). Also on February 1, 2016, the Court denied Defendants' Emergency Motion to Lift Asset Freeze to Provide Interim Living Expenses (Dkt. #60).

On March 11, 2016, Defendants filed their Re-Urged Emergency Motion to Lift Asset Freeze to Provide Interim Attorneys' Fees (Dkt. #83). On March 25, 2016, the FTC filed its response (Dkt. #88). On March 28, 2016, Receiver filed her response (Dkt. #90). On April 4, 2016, Defendants filed their reply to the FTC's response (Dkt. #91). On April 7, 2016, Defendants' filed their reply to the Receiver's response (Dkt. #94). On April 8, 2016, Defendants' filed an amended reply to the Receiver's response (Dkt. #95). On April 14, 2016, the FTC filed its sur-reply (Dkt. #97). On April 25, 2016, Defendants' filed their response to the

---

[1] The Court amended its Order after Receiver filed her Emergency Motion for Amended Order Regarding Miscellaneous Relief, in which Receiver requested that the Court amend the order to conform the entities whose assets are subject to the Order to the definitions in the Preliminary Injunction (Dkt. #38 at p. 3). Defendants filed their response on January 7, 2016 (Dkt. #40). Receiver filed her reply on January 8, 2016 (Dkt. #41). After reviewing the pleadings, the Court granted Receiver's emergency motion, and entered the Amended Order Regarding Receiver's Motion for Miscellaneous Relief (Dkt. #42).

FTC's sur-reply (Dkt. #99). On July 19, 2016, Defendants filed their Amended Motion to Lift Asset Freeze to Provide Interim Attorneys' Fees (Dkt. #158)

## LEGAL STANDARD

The computation of a reasonable attorneys' fee award is a two-step process. *Rutherford v. Harris Cnty, Tex.*, 197 F.3d 173, 192 (5th Cir. 1999) (citation omitted). First, the court must utilize the lodestar analysis to calculate a "reasonable" amount of attorneys' fees. *Id*. The lodestar is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. *Id*. Second, in assessing the lodestar amount, the court must consider the twelve factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), before final fees can be calculated. *Id*.

The *Johnson* factors are:

(1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

*Id*. at 192 n.23 (citing *Johnson*, 488 F.2d at 717-19).

The court may adjust the lodestar upward or downward. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). The fee applicant bears the burden of proof on this issue. *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). "Many of [the Johnson] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted).

The lodestar is presumptively reasonable, and should be modified only in exceptional cases. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The fee-seeker must submit adequate documentation of the hours reasonably expended, and of the attorney's qualifications and skill, while the party seeking reduction of the lodestar must show that a reduction is warranted. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

**ANALYSIS**

Defendants request that the Court unfreeze at least $200,000 of the assets frozen within the Court's Preliminary Injunction in order for Defendants to pay legal counsel in the above-referenced proceeding and to pay litigation-related expenses incurred by defense counsel (Dkt. #158 at p. 15). The FTC asserts that they currently seek approximately $7.9 million against Defendants (Dkt. #88 at p. 5). Because the anticipated equitable monetary relief in this matter exceeds the amount of assets frozen, the FTC asserts that assets should not be unfrozen for Defendants to pay their attorneys' fees (Dkt. #88 at p. 5).

"[J]ust as this Court has the authority to freeze assets in [a] civil enforcement action, it also has the discretion to unfreeze those assets when equity requires." *F.T.C. v. Vantage Point Servs., LLC*, 15-65-6S, 2016 WL 1745514, at *1 (W.D.N.Y. May 3, 2016) (quoting *F.T.C. v. 4 Star Resolution, LLC*, No. 15-CV-112, 2015 WL 4276273, at *1 (W.D.N.Y. July 14, 2015)); *see Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995); *F.T.C. v. IAB Mktg. Assocs.*, No. 12-61830-Civ., 2013 WL 2433214, at *2 (S.D. Fla. June 4, 2013). When determining the release of frozen asserts the Court must consider the following: (1) the plaintiff's interest in protecting the assets for consumer restitution; and (2) the defendant's interest in having access to the funds. *See S.E.C. v. Dobbins*, No. 3:04-CV-0605-H, 2004 WL 957715, at *2 (N.D. Tex. Apr. 14, 2004).

"In balancing the defendants' right to fund their defense against the preservation of assets to compensate potential victims, the Court considers 'whether the defendants have other available funds by which to pay their attorneys, which requires full financial disclosure by the defendants' as well as 'the claims of the consumers who were the victims of the defendants' [alleged] wrongdoing.'" *Vantage Point Servs., L.L.C.*, 2016 WL 1745514, at *2 (quoting *4 Star Resolution, L.L.C.*, 2015 WL 4276273, at *1 (quoting *FTC v. OT, Inc.*, 467 F. Supp. 2d 863, 866 (N.D. Ill. 2006))). Therefore, while "some kind of allowance must be made to permit each defendant to pay reasonable attorneys' fees if [the defendant] is able to show that he cannot pay them from new or exempt assets; the burden…will be on the defendant to satisfy the court that he can secure the services of an attorney only if assets subject to the freeze order are released." *Fed. Savings & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987).

In the present case, the Court finds that Defendants have not met their burden. The FTC currently estimates the amount of damages to be approximately $7.9 million (Dkt. #88 at p. 1). Additionally, the assets within the Receivership estate are not sufficient to pay for any consumer restitution at the end of the action (Dkt. #90 at p. 1). The Court agrees with Defendants that legal representation is necessary; however, Defendants have not met their burden demonstrating that they cannot pay for their legal representation from their exempt assets.[2] The FTC asserts that Defendants have resources in personal IRAs, rental income, social security accounts, and the equity in property claimed as homestead that could be used to pay their attorneys' fees (Dkt. #88

---

[2] Defendants cite to *Luis v. United States*, 136 S.Ct. 1083 (2016), for the proposition that the Court should unfreeze the assets. The Court finds the *Luis* case to be distinguishable for multiple reasons. First, the Supreme Court was addressing a criminal defendant's right to representation. *Luis*, 136 S.Ct. at 1101. Also in *Luis*, the Government was attempting to freeze "un-tainted" assets. *Id.* at 1095. In the present case, Defendants have access to use their exempt assets to pay for attorneys' fees; however, Defendants wish to unfreeze non-exempt assets held by the Receivership estate for payment. Therefore, the Court finds that *Luis* is not applicable to the present action.

at pp. 9-10). As Defendants have not met their burden, the Court finds that Defendants' motion should be denied.[3] Defendants may pay their attorneys' fees out of their exempt assets.

## CONCLUSION

It is therefore **ORDERED** that Defendants Liberty Supply Co. also d/b/a Omni Services, Mia L. McCrary, John B. Hart, and Nor-Jay Enterprises, Inc.'s Re-Urged Emergency Motion to Lift Asset Freeze to Provide Interim Attorneys' Fees (Dkt. #83) is hereby **DENIED**.

It is further **ORDERED** that Defendants' Amended Motion to Lift Asset Freeze to Provide Interim Attorneys' Fees (Dkt. #158) is hereby **DENIED**.

**SIGNED this 8th day of August, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[3] In making its determination, the Court expresses no opinion as to the reasonableness of the amount of fees and expenses requested by Defendants. As Defendants have not met their burden to demonstrate that they cannot pay their attorneys' fees from their exempt assets, the Court will not address Defendants' lodestar analysis, or whether the amount of fees requested by Defendants was reasonable.