# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION | § | |
| | § | |
| v. | § | CASE NO. 4:15-CV-829 |
| | § | Judge Mazzant |
| LIBERTY SUPPLY CO., also d/b/a Omni | § | |
| Services; et al. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Receiver's Motion for Expedited Show Cause Hearing and Motion for Sanctions (Dkt. #126) and Receiver's Motion Supplement in Support of Motion for Sanctions (Dkt. #147). After reviewing the relevant pleadings, the Court finds that the motions should be granted.

## BACKGROUND

On December 4, 2015, the Federal Trade Commission (the "FTC") filed its complaint against Defendants, in which it alleged that Defendants operated an unlawful office supply scam that violated the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. § 45(a), the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and the Unordered Merchandise Statute, 39 U.S.C. § 3009 (Dkt. #1). Also on December 4, 2015, Plaintiff requested an ex parte Temporary Restraining Order ("TRO") with injunctive, receivership, and asset freeze provisions (Dkt. #4). On December 4, 2015, the Court granted Plaintiff's Motion for Temporary Restraining Order, entered its temporary restraining order, and set the case for a show cause for December 17, 2015 at 10:00 a.m. (Dkt. #12).

On December 17, 2015, the Court held a preliminary injunction hearing, and at the end of the hearing, extended the TRO for fourteen days to allow the parties to brief the issue regarding the proper scope of the asset freeze under the FTC Act (Dkt. #30). On December 30, 2015, the

Court entered its Preliminary Injunction, which continued the appointment of the receiver, enjoined further violations of law, and continued the asset freeze against Defendants (Dkt. #36). Also on December 30, 2015, the Court entered its Order Regarding Receiver's Motion for Miscellaneous Relief (Dkt. #37), which the Court later amended on January 8, 2016 (Dkt. #42).[1]

On June 28, 2016, the Receiver filed her Motion for Expedited Show Cause Hearing and Motion for Sanctions against Defendants and non-party accountants, Dan Snyder ("Snyder") and Mike Rigler ("Rigler") (collectively, with Synder, the "Accountants") (Dkt. #126)[2]. On July 5, 2016, Defendants Mia L. McCrary ("McCrary") and John B. Hart ("John Hart") filed their response (Dkt. #137). On July 5, 2016, the FTC filed its response (Dkt. #140). On July 6, 2016, Defendant Norma Hart filed her response (Dkt. #142).

On July 7, 2016, the Court held a hearing, in which it took up Receiver's motion (Dkt. #144). Following the hearing, the Court entered an order, in which it stated that it would take the issue of sanctions under advisement (Dkt. #149 at p. 1). Additionally, the Court gave both Receiver and the Accountants additional time for briefing the issue of sanctions (*see* Dkt. #149 at p. 1). Also on July 7, 2016, Receiver filed her Motion Supplement in Support of Motion for Sanctions (Dkt. #147). The Accountants did not file a response.

---

[1] The Court amended its Order after Receiver filed her Emergency Motion for Amended Order Regarding Miscellaneous Relief, in which Receiver requested that the Court amend the order to conform the entities whose assets are subject to the Order to the definitions in the Preliminary Injunction (Dkt. #38 at p. 3). Defendants filed their response on January 7, 2016 (Dkt. #40). Receiver filed her reply on January 8, 2016 (Dkt. #41). After reviewing the pleadings, the Court granted Receiver's emergency motion, and entered the Amended Order Regarding Receiver's Motion for Miscellaneous Relief (Dkt. #42).

[2] During the July 7, 2016 show cause hearing, an issue arose about the scope of Receiver's motion—specifically, whether Receiver was including Defendants' attorneys within the contempt motion and sanctions. At that time, the Court stated that it did not consider the attorneys to be included within the scope of the motion. Therefore, for purposes of this Order, Defendants' attorneys' conduct will not be considered, and sanctions will not be assessed against the attorneys.

**LEGAL STANDARD**

"Courts possess the inherent authority to enforce their own injunctive decrees." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (citing *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985), *cert. denied*, 474 U.S. 1056 (1986)). A party commits contempt when, with knowledge of a court's definite and specific order, he fails to perform or refrain from performing what is required of him in the order. *In re Bradley*, 588 F.3d 254, 264 (5th Cir. 2009); *S.E.C. v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981). "A court order binds not only the parties subject thereto, but also non-parties who act with the enjoined party." *Whitcraft v. Brown*, 570 F.3d 268, 272 (5th Cir. 2009); *see NLRB v. Laborers' Int'l Union of N. Am., AFL-CIO*, 882 F.2d 949, 954 (5th Cir. 1989); *Waffenschmidt v. MacKay*, 763 F.2d 711, 726 (5th Cir. 1985) (citing *Ex Parte Lennon*, 166 U.S. 548 (1897)); *see also* FED. R. CIV. P. 65(d)(2) (stating that every injunction and restraining order "binds…the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participations with anyone described in Rule 65(d)(2)(A) or (B).").

A court may enforce its orders through civil contempt, which is intended to compel obedience to a court order. *See In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009) ("If the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. If the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation, the order is considered purely civil."). "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts

with knowledge of the court's order." *SEC v. First Fin. Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981).

In a civil contempt proceeding, the movant bears the burden of establishing the elements of contempt by clear and convincing evidence. *SEC v. Res. Dev. Int'l LLC*, 217 F. App'x 296, 298 (5th Cir. 2007) (citing *Petroleos Mexicanos v. Crawford Enter., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987)). The elements of contempt that the movant must prove by clear and convincing evidence are: (1) a court order is or was in effect; (2) the order requires certain conduct; and (3) the opposing party fails to comply with the court order. *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000); *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). "The contemptuous action need not be willful so long as the contemnor actually failed to comply with the court's order." *Am. Airlines, Inc.*, 228 F.3d at 581; *see N.L.R.B. v. Trailways, Inc.*, 729 F.2d 1013, 1017 (5th Cir. 1984).

## ANALYSIS

Receiver asserts that both Defendants and the Accountants failed to comply with the Court's Preliminary Injunction. Specifically, Receiver asserts, as follows:

> Defendants refused to a) state whether the individual defendants had executed any documents on behalf of Liberty, NorJay, or Texas 110, and, (b) provide any such non-privileged documents executed by the individual Defendants.
> The Accountants refused to provide copies of a) all work papers, including profit and loss statements used to prepare the 2015 returns; b) copies of any 2015 returns prepared and/or filed for Liberty, NorJay, and/or Texas 110; c) copies of any extensions or requests for extensions filed for any of these entities; d) copies of the 2012, 2013, and 2014 returns for Liberty, NorJay and Texas 110.

(Dkt. #126 at p. 8). Defendants[3] assert that Receiver is attempting "to compel information that [the] Court could not lawfully compel[,]" as it is protected by attorney-client privilege (Dkt. #137 at p. 5). The Court will address Defendants and the Accountants separately.

*Accountants[4]*

Receiver asserts that the Accountants refused to provide copies of (1) all work papers, including profit and loss statements used to prepare the 2015 returns; (2) copies of any 2015 returns prepared and/or filed for Liberty, NorJay, and/or Texas 110; (3) copies of any extensions or requests for extensions filed for any of the entities; and (4) copies of the 2012, 2013, and 2014 tax returns for Liberty, NorJay, and Texas 110 (Dkt. #126 at p. 8). At the show cause hearing on July 7, 2016, Snyder asserted that the Accountants had fully complied with the Court's Order. Accountants also asserted to Receiver that "they lack 'consent' from their 'clients' to provide the requested documents and information." (Dkt. #126 at p. 9 n. 32).

The Court finds that the Accountants are in contempt of Court. The first two elements are established. The Court entered the Preliminary Injunction on December 30, 2015 (Dkt. #36). The Preliminary Injunction states as follows:

> Defendants and Receivership Entities, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person with possession custody, or control of Assets or Documents relating to the Receivership Entities shall, upon notice of this Order by personal service or otherwise, immediately notify the Permanent Receiver of, and upon receiving a request from the Permanent Receiver, immediately deliver to the Permanent Receiver possession, custody, and control of the following:
> 1. All Assets of the Receivership Entities;
> 2. All Documents of the Receivership Entities;

---

[3] In her response, Defendant Norma Hart adopted McCrary and John Hart's response (Dkt. #138 at p. 1). Therefore, the statements in McCrary and John Hart's response will also apply to Norma Hart.

[4] In its order regarding the show cause hearing, the Court gave the Accountants until July 21, 2016, to file any additional evidence regarding possible sanctions (Dkt. #149 at p. 1). The Accountants did not file any additional evidence; therefore, when making its determination, the Court will consider those arguments that the Accountants presented during the hearing.

5

> 3. All Assets belonging to members of the public now held by the Receivership Entities;
> 4. All computers and data in whatever form used to conduct the business of the Receivership Entities; and
> 5. All keys, codes, and passwords, entry codes, combinations to locks, and information or devises required to open or gain access to any Asset or Document, including, but not limited to, access to the business premises, computer servers, networks, or databases, or telecommunications systems or devises.

(Dkt. #36 at pp. 23-24). The Preliminary Injunction also stated, in relevant part:

> **IT IS FURTHER ORDERED** that Defendants and Receivership Entities, and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, shall fully cooperate with and assist the Permanent Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Entities. This cooperation and assistance shall include:
> A. Providing information to the Permanent Receiver that the Permanent Receiver deems necessary in order to exercise the authority and discharge the responsibilities of the Permanent Receiver under this Order[.]

(Dkt. #36 at p. 25). Furthermore, the Preliminary Injunction stated:

> **IT IS FURTHER ORDERED** that Defendants and Receivership Entities, and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are preliminary restrained and enjoined from:
> A. Interfering with the Permanent Receiver managing, or taking custody, control, or possession of, the Assets or Documents subject to the receivership;
> B. Transacting any of the business of the Receivership Entities;
> C. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities, or the Permanent Receiver; and
> D. Refusing to cooperate with the Permanent Receiver or the Permanent Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

(Dkt. #36 at pp. 25-26). It is apparent from the plain language of the Preliminary Injunction that the Accountants were required to work with the Receiver, and to provide her any information about Defendants and the Receivership Entities that she requested. Therefore, the only question

6

remaining for the Court to decide is whether there is clear and convincing evidence that the Accountants failed to comply with the Court's Preliminary Injunction.

After reviewing the evidence submitted, it is apparent to the Court that the Accountants did fail to comply with the Court's Preliminary Injunction. Neither Rigler nor Snyder provided the following documents to the Receiver, upon her request as stated within the Preliminary Injunction[5]: (1) the 2015 tax return for Liberty; (2) the profit and loss statements or balance sheets used to prepare the Receivership Entities' 2015 tax returns; (3) previous years' tax returns for the Receivership Entities, specifically for the years 2012, 2013, and 2014, so that the 2015 tax return could be reviewed for accuracy (Dkt. #147 at p. 2). Additionally, neither Rigler nor Snyder provided their work papers to the Receiver (Dkt. #147 at p. 2). At the hearing, Snyder asserted that the work papers were his property; and therefore, he did not have to provide them to the Receiver (*see* Dkt. #147 at p. 2).

Additionally, evidence was presented that Receiver requested the materials from the Accountants on multiple occasions. On May 18, 2016, Receiver requested that the Accountants send her the work papers, the returns for the prior years for each entity, and any documents or information they used to prepare the returns that were filed (Dkt. #126, Exhibit E). At that time, Rigler stated that he would send the copies and look up the work papers (Dkt. #126, Exhibit E). On May 25, 2016, Receiver again asked about the copies of 2015 returns, as well as the returns for prior years, and any work papers used to draft the 2015 returns (Dkt. #126, Exhibit E). Rigler responded on May 28, 2016, and said that the Accountants would have to resend the 2015 tax returns, as they had been returned (Dkt. #126, Exhibit E). He also stated that the Accountants would be sending the 2012, 2013, and 2014 tax returns and working papers (Dkt. #126, Exhibit E).

---

[5] The documents were provided to Receiver following the July 7, 2016 show cause hearing (Dkt. #147 at p. 2).

On June 9, 2016, Rigler wrote to Receiver, and stated that the Accountants sent the 2015 tax returns and worksheets used to prepare the returns. However, they could not "send [the] prior returns unless [they got] permission from one of the officers of the corporations or [they got] a court order telling [them] to send them." (Dkt. #126, Exhibit G). Receiver responded that she had not received the worksheet or the prior years' returns (Dkt. #126, Exhibit G). Additionally, she stated that she was the only officer for the company, and the only person authorized to take action with respect to each, and she cited to and included a copy of the Court's Preliminary Injunction (Dkt. #126, Exhibit G)[6]. Receiver also informed the Accountants that the Preliminary Injunction required the Accountants "to produce any documents to [Receiver] that are requested and which are necessary for [her] to perform [her] duties." (Dkt. #126, Exhibit G). Rigler responded that "[d]ue to the lack of payment of fees, the problems we have sending confidential information and your hostility I suggest you obtain the information elsewhere."

---

[6] The portion cited by Receiver states, in pertinent part:
> **IT IS FURTHER ORDERED** that the Permanent Receiver is directed and authorized to accomplish the following:
> A. Assume full control of the Receivership Entities by removing, as the Permanent Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Entities, including any Defendant, from control of, management of, or participation in, the affairs of the Receivership Entities;
> B. Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or control of, the Receivership Entities, wherever situated. The Permanent Receiver shall have full power to divert mail and to sue for, collect, receive, take possession of, hold, and manage all Assets and Documents of the Receivership Entities and other persons whose interest are now under the direction, possession, custody, or control of, the Receivership Entities. The Permanent Receiver shall assume control over the income and profits and all sums now and hereafter due or owing to the Receivership Entities. *Provided*, however, that the Permanent Receiver shall not attempt to collect any amount from a consumer if the Permanent Receiver believes the consumer was a victim of the unlawful conduct alleged in the Complaint in this matter;
> […]
> H. Manage and administer the business of the Receivership Entities by performing all incidental acts that the Permanent Receiver deems to be necessary or advisable, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;
> I. Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists as the Permanent Receiver deems necessary or advisable in the performance of duties and responsibilities under the authority granted by this Order.

(Dkt. #36 at pp. 19-22).

(Dkt. #126, Exhibit G). On June 9, 2016, Snyder responded to Receiver, and stated the following:

> In Item #2, you request copies of tax returns for 2012, 2013, and 2014. Understand that by law, we cannot provide copies of these to you without either: a) written instructions from our client; or b) a court mandate. Now we have requested from our client permission to send you these returns but until we get that permission we cannot do so. You are of course free to request the court to force us to provide these to you but understand, under federal law a request for documents is not sufficient.

(Dkt. #126, Exhibit G). Receiver responded to Snyder within the email, and explained that the Preliminary Injunction was a court mandate and "could not be more clear and your requirement to produce the tax returns and other documents [she] asked for." (Dkt. #126, Exhibit G). Additionally, the Receiver stated as follows:

> The [Preliminary] Injunction is not a request for documents; it is a court order and compels you to produce what has been requested. Ignoring or violating the order is a civil contempt of court for which you can be incarcerated until you comply with the order, or otherwise sanctioned.

(Dkt. #126, Exhibit G). Receiver did not receive her requested documents until after the July 7, 2016 show cause hearing (Dkt. #147 at p. 2).

Receiver also asserted the following, "Rigler informed the Receiver that he had not filed extensions for the 2015 federal returns and had filed those returns, and after accountant Snyder provided the exact opposite information [that an extension had been filed], *neither would confirm which story was true*." (Dkt. #147 at p. 1). The evidence shows that on April 15, 2016, the Receiver wrote the Accountants and stated the following:

> [Rigler] informed me earlier this week that extensions for the federal returns for Nor Jay and Texas 110 were not filed, and I apologize if I was not clear in requesting those extensions. To avoid penalties related to not filing any returns, please prepare the returns for those entities and send them to me for review at your convenience.

9

(Dkt. #126, Exhibit C). On June 9, 2016, Snyder wrote to Receiver, in which he stated that "In Item 1 you ask for copies of the 2015 tax returns. At your instruction, these returns have been extended but have NOT been filed." (Dkt. #126, Exhibit G). Receiver responded, within Snyder's email, that "Mr. Rigler previously informed [her] that despite [Receiver's] request he *did not* file extensions. And, although instructed not to file returns without [Receiver's] final review, he informed [her] that he had filed the 2015 returns, electronically." (Dkt. #126, Exhibit G). At the show cause hearing, Snyder asserted that he did not respond to Receiver's comment. Snyder also asserted that the Receivership Entities were among the companies that the Accountants had listed as having filed an extension for, but he could not confirm that the IRS received the extension.

After reviewing the evidence, the Court finds the Accountants in contempt of the Court's Preliminary Injunction. The Court finds that Accountants did respond to Receiver's question regarding filing the extension, even if they did not respond as thoroughly as she may have liked. However, until the July 7, 2016 show cause hearing, Defendants did not provide Receiver with the documents that she requested. Specifically, the Court finds that Defendants did not provide Receiver with the following: (1) the 2015 tax return for Liberty Supply; (2) the profit and loss statements or balance sheets used to prepare the Receivership Entities' 2015 tax returns; (3) previous years' tax returns for the Receivership Entities, specifically for the years 2012, 2013, and 2014, so that the 2015 tax return could be reviewed for accuracy. The Court understands that the Accountants believed that they needed a court order in order to provide the requested documents to the Receiver. However, Receiver explained to the Accountants, that the Preliminary Injunction is an order, which required them to work with Receiver and provide her

with requested documents (*See* Dkt. #36 at pp. 23-25). The Court finds that the Accountants were in violation of the Court's Preliminary Injunction, and thus, the third element is established.

The Court finds that Receiver has established by clear and convincing evidence that the Accountants were both aware of the Preliminary Injunction and nevertheless violated the terms of the Preliminary Injunction by refusing to cooperate with Receiver regarding actions pursuant to the Court's Preliminary Injunction.

*Defendants*

Receiver asserts that Defendants refused to (1) state whether the individual defendants had executed any documents on behalf of Liberty, NorJay, or Texas 110; and (2) provide any such non-privileged documents executed by the Individual Defendants (Dkt. #126 at p. 8). Additionally, Receiver asserts that there is no basis for Defendants' assertion of privilege as "[n]o possible privilege protects the *fact* of whether Defendants executed documents on behalf of any Receivership Entities." (Dkt. #126 at p. 9).

The Court finds that the Defendants are in contempt of Court. The first two elements are established. Therefore, the only question for the Court to address is whether there is clear and convincing evidence that the Accountants failed to comply with the Court's Preliminary Injunction.

The evidence shows that Defendants did fail to comply with the Court's Preliminary Injunction. The Receiver emailed Defendants, through their counsel, on multiple occasions in an attempt to determine whether "any of the individual Defendants [had] signed any documents on behalf of any of the entities since December 7, 2015." (Dkt. #126, Exhibit H). If they did sign any documents on behalf of the Receivership Entities, Receiver requested copies of non-privileged documents (Dkt. #126, Exhibit H). Defendants asserted that answering Receiver's

11

question would require them to violate their attorney-client privilege (Dkt. #137; Dkt. #142; *see* Dkt. #126, Exhibit H).

Additionally at the July 7, 2016 show cause hearing, Receiver stated that she was only seeking factual information, and requested a telephone call prior to the hearing with Defendants so that attorney-client privilege would not be affected. Defendants refused. At the hearing, Defendants agreed to meet and answer Receiver's questions.

The Court wishes that Defendants would have taken Receiver up on her offer to have a telephone conference and answer questions prior to the show cause hearing. Although it appears that Defendants, and their counsel, believed that Receiver's question impacted the attorney-client privilege, any such good faith belief is not relevant to the Court's contempt analysis. *See Burdine v. Johnson*, 87 F. Supp. 2d 711, 714 (S.D. Tex. 2000) ("In a civil contempt proceeding, the contemnor's good faith, or the fact that the violation was unintentional, is not a defense."); *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *Waffenschmidt v. MacKay*, 763 F.2d 711, 726 (5th Cir. 1985), *cert. denied*, 474 U.S. 1056 (1986).

As stated above, "[c]ivil contempt can serve two purposes. It can be used to enforce compliance with a court's order through coercion, or it can be used to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961-62 (5th Cir. 1995) (citing *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 400 (5th Cir. 1987)). However, "[i]f the purpose of the sanction is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal." *In re Bradley*, 588 F.3d at 263. "The sanctions 'are to be adapted to the particular circumstances of each case.'" *Burdine*, 87 F. Supp. 2d at 714 (quoting *N.L.R.B. v. Trailways, Inc.*, 729 F.2d 1013, 1023 (5th Cir. 1984)).

Receiver states that "the estate…incurred $9,057.50, in connection with the Show Cause Motion and hearing," and she requests sanctions in that amount[7]. (Dkt. #147, Exhibit A). The Court finds that Defendants' and the Accountants' actions are significant that Receiver's request should be granted. If Defendants and the Accountants had complied with the Receiver's requests, the present motion would have been unnecessary. Therefore, the Court finds that the Receiver is entitled to an award of sanctions from Defendants Mia L. McCrary, John B. Hart, and Norma Hart[8], and the Accountants Dan Snyder and Mike Rigler, jointly and severally, in the amount of $9,057.50.

## CONCLUSION

It is therefore **ORDERED** that Receiver's Motion for Expedited Show Cause Hearing and Motion for Sanctions (Dkt. #126) is hereby **GRANTED**.

It is further **ORDERED** that Receiver's Motion Supplement in Support of Motion for Sanctions (Dkt. #147) is hereby **GRANTED**.

It is further **ORDERED** that Defendants Mia L. McCrary, John B. Hart, and Norma Hart, and Non-Parties Dan Snyder and Mike Rigler shall pay, jointly and severally, $9,057.50, to Receiver within 14 days of this Order.

---

[7] Receiver also requests that the issue of payment to the Accountants be addressed separately from this request for sanctions. But that she will submit outstanding invoices received from the Accountants with future fee petitions, together with her request or recommendation as to whether those invoices should be approved or paid. The Court finds that denying the Accountants payment of fees would be a punitive punishment as the documents have been produced by Accountants. As this is a civil contempt proceeding, the Court finds that payments owed to Accountants should not be withheld, as it would neither (1) enforce compliance with the Court's Preliminary Injunction Order; or (2) compensate the injured party for injuries sustained because of the conduct. However, at the time of determining the Accountants' fees, the Court will consider whether they charged Receiver for the conduct that lead to the present motion.

[8] Although some of Defendants' assets have been frozen by the Preliminary Injunction, the Court finds that Defendants may use their exempt assets, in which to pay Receiver the sanctions.

The Clerk's Office is directed to mail Non-Parties Mike Rigler and Dan Snyder a copy of this Order to the following address:

>316 West Broadway Street
>Gainesville, Texas 76240.

**SIGNED this 19th day of August, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE